JUDGE SULLIVAN          10 CV 6228

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
RECKITT BENCKISER INC.,

                      Plaintiff,

-against-

MOTOMCO LTD.,

                      Defendant.
------------------------------------------------------------x



## COMPLAINT

Plaintiff Reckitt Benckiser Inc. ("Reckitt" or "Plaintiff"), by and through its undersigned counsel, hereby brings the following Complaint against Defendant Motomco Ltd. ("Motomco" or "Defendant") for violations of the Lanham Act.

In support thereof, Plaintiff makes the following allegations on personal knowledge and upon information and belief.

## INTRODUCTION

1. Plaintiff seeks a temporary restraining order, other injunctive relief, disgorgement of profits, and other damages pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which prohibits false or misleading advertising and unfair trade practices in interstate commerce.

2. Motomco is disseminating false statements denigrating Reckitt Benckiser's d-CON® rodenticide products ("d-CON® products") and using a document purporting to be issued by a government entity to mislead Reckitt Benckiser's retail customers.

3. Motomco's claims are literally false and/or misleading because: (a) the document purporting to be issued by a government entity was *not* issued by a government entity but was instead created by Motomco; (b) the document announces a purported "regulation" from the

New York State Department of Environmental Conservation (NYSDEC) but, although NYSDEC has corresponded with rodenticide registrants, it has issued no such regulation; (c) further, to date, no agency has cancelled, revoked, recalled, or suspended any registration for d-CON® products; and (d) although the EPA has stated June 4, 2011 is the last day registrants can sell or distribute certain rodenticide products, Reckitt Benckiser is currently challenging that determination in the United States District Court for the District of Columbia, and if successful, Reckitt Benckiser expects to continue marketing d-CON® rodenticide products.

4. Additionally, Motomco's dissemination of this document is accompanied by emails which liken Reckitt Benckiser to the "Titanic" and threaten that retail customers who buy d-CON® products will be "lead down a path that will cause disruption to his business, loss of revenue, as well as quarantine of products and substantial fines and penalties." These disparaging emails are similarly false and/or misleading.

## THE PARTIES

5. Plaintiff Reckitt Benckiser is a corporation organized and existing under the laws of Delaware with its principal place of business at 399 Interpace Parkway, Parsippany, New Jersey, 07054. Reckitt Benckiser is a global manufacturer of rodenticides intended for use by individuals in their homes and sold under the d-CON® brand name in the United States.

6. On information and belief, Defendant Motomco is a Wisconsin corporation with headquarters at 3699 Kinsman Boulevard, Madison, Wisconsin, 53704. Motomco is has a rodenticide product known as "Tomcat" that competes with d-CON®.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction because this action arises out of violations of the federal laws pursuant to 28 U.S.C. §§ 1331, 1338(a) and 15 U.S.C. § 1125(a).

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

### I. THE PARTIES COMPETE IN SELLING RODENTICIDE PRODUCTS

#### A. Rodent Pest Control Generally

9. Rodents are a nuisance and can be dangerous to human health.

10. They aggravate asthma and allergy problems and carry numerous diseases, including Hantavirus, Salmonella, Bubonic plague, Trichinosis, and Leptospirosis.

11. Rats and mice reproduce very quickly and are able to squeeze through nickel- and dime-sized spaces.

12. Rodents contaminate food, cause structural damage, and reduce business productivity. They cause billions of dollars in economic loss each year.

13. Rodent prevention products are baits and traps that kill or capture rodents, primarily mice and rats. They are sold in various forms.

14. Baits contain poisonous meal, grains, pellets, or blocks. They provide a method of rodent control that does not require people to come in contact with the rodents.

15. Baits are used in hard-to-reach, low-traffic areas like basements and attics. Once a rodent eats the bait, it leaves to seek water and dies within a few days.

16. Most rat and mouse poisons are anticoagulants, which reduce blood clotting and cause death from internal bleeding or anemia.

17. Traps are used to capture and sometimes kill rodents.

18. Snap traps are designed to immediately kill a rodent that seeks the peanut butter, nuts, or cheese used to lure the animal into the trap. Glue traps secure the rodent for disposal using an adhesive. Live traps are used to catch mice for outdoor release.

**B. Reckitt Benckiser's d-CON® Rodenticides**

19. Reckitt Benckiser manufactures consumer-use rodenticides, sold under the "d-CON®" registered trademark and brand name.

20. Certain d-CON® products contain "second-generation" anticoagulant active ingredients.

21. d-CON® products have been on the market for over 50 years, and Reckitt Benckiser invests approximately $5 million annually in marketing d-CON® products.

22. d-CON® products include bait trays, packs, pouches, blocks, and wedges, as well as snap, glue, and live traps.

23. Retail consumers of d-CON® rodent control products include: The Home Depot, WalMart, Lowe's, CVS/Pharmacy, Walgreens, and Wegmans.

**C. Motomco's TOMCAT® Rodenticides**

24. Motomco manufactures consumer-use rodenticides, sold under the "TOMCAT®" registered trademark and brand name.

25. TOMCAT® rodenticides contain "first generation" anticoagulant active incredients diphacinone or sodium diphacinone

26. Motomco's line of rodenticides includes rodent baits, bait stations, mechanical traps, adhesives, and mole control products.

27. Reckitt Benckiser's d-CON® rodenticides are sold for household use to retail consumers and TOMCAT® rodenticides compete with Reckitt's in the market for retail consumers.

## II. MOTOMCO'S FALSE AND MISLEADING STATEMENTS DISPARAGING RECKITT BENCKISER AND THE d-CON® BRAND

28. Motomco has released false and/or misleading statements into national commerce that disparage Reckitt Benckiser and the d-CON® brand.

29. The statements mislead Reckitt Benckiser's retail customers and users of Reckitt Benckiser's d-CON® products into believing that d-CON® is, or imminently will be, burdened with adverse regulatory action at the state and federal level when in fact no such adverse regulatory action has occurred.

30. On information and belief, Motomco is using this campaign to create confusion especially among large retail customers, with the intent to cause these customers to stop carrying and providing premium shelving to d-CON® products.

31. As part of this campaign, Motomco created a so-called NYSDEC "White Paper" purporting to report that certain regulations had been issued and to reflect the official policy of the New York State Department of Environmental Conservation, and, in fact, has attempted to pass off the Motomco-created document as an official document of NYSDEC.

32. Motomco Sales Manager Mike Rosen sent an email to Gerry Winkler on August 12, 2010.

33. In this email, Mr. Rosen states as follows:

It is critically important that we get the attached information to Mark as quickly as possible.

D-Con / Reckett has been attempting for months to have the EPA's Risk Mitigation decision overturned and has sued twice to do so. Each time they have lost in court. The EPA fully intends to proceed with full compliance based upon the law. More so, New York State has officially gone on record as stating that it will fully enforce Risk Mitigation once the date for it (June 4th, 2011) has arrived, regardless of what may or may not occur with the EPA decision.

> The EPA has designated key individuals as retailer contact points to discuss and certify that Risk Mitigation is moving forward and refute any claims to the contrary. Their business cards are on the front page of the attached White Paper
>
> The "White Paper" and NYSDEC letters clearly point this out. Please get these to Mark and make certain he reads and understands these completely.
>
> He will discover that he is being lead down a path that will cause <u>disruption to his business, loss of revenue as well as quarantine of products and substantial fines and penalties should he choose to believe d-Con.</u> d-Con is on the Titanic and doing whatever they can to climb onto any lifeboat they can.
>
> Thanks for following up on this ASAP. Call with any questions.

*See* Exhibit B to the Declaration of Debra Eible (which is being filed herewith) (emphasis added).

34. The direct recipient of this email is Gerry Winkler, who on information and belief is employed by an independent marketing organization which facilitates Motomco's nationwide marketing and advertising.

35. On information and belief, Ms. Winkler has forwarded the Motomco communication to major retailers who are among Reckitt Benckiser's customers, including in New York, at Motomco's direction.

36. Motomco also supplied the so-called NYSDEC "White Paper" to other major retailers who are nation-wide distributors of Reckitt Benckiser's d-CON® products.

37. The "White Paper" is a document titled "New York State Department of Environmental Conservation (NYSDEC)," and it appears as an official statement of the NYSDEC complete with the names of Ms. Maureen P. Serafini, Director, NYSDEC Bureau of Pesticides Management, and a prominent member of her staff, Ms. Paula McBath.

38. Motomco's cover email indicates that the attachment is "NYSDEC White Paper.pdf."

39. The attachment contains the following text:

> **NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION (NYSDEC)**
>
> Effective June 4, 2011 no second-generation anticoagulant rodenticides packaged as pelleted, loose baits or meal (and labeled for consumer use) can be sold, offered for sale, distributed or used in the state of New York.
>
> The above regulation was issued in a letter from NYSDEC to registrants in early 2010 and was consistent with previous communications dating as far back as October 2008. This regulation will go into effect June 5, 2011 regardless of the status of any outstanding legal cases involving the U.S. EPA that may still be under review in federal court.
>
> If any retailer buyer or legal department has any questions regarding NYSDEC's above guidelines, confirmation can be made by contacting either Maureen Serafini or Paula McBath. Their contact information is included below.
>
> Ms. Maureen P. Serafini  
> Director  
> NYSDEC  
> Bureau of Pesticides Managment, 11th Flr  
> Pesticide Product Registration Section  
> 625 Broadway, Albany, NY 12233-7257  
> Ph: 518-402-8768  Fx: 518-402-9024  
> Website: www.dec.ny.gov  
> E-mail: ppr@gw.dec.state.ny.us
>
> Ms. Paula McBath  
> Staff Member  
> NYSDEC  
> Bureau of Pesticides Management, 11th Flr  
> Pesticide Product Registration Section  
> 625 Broadway, Albany, NY 12233-7257  
> Ph: 518-402-8768  Fx: 518402-9024  
> Website: www.dec.ny.gov  
> E-mail: ppr@gw.dec.state.ny.us

40. Contrary to the representations of Motomco, this document was not prepared by or issued by NYSDEC.

41. Motomco, through its counsel, has subsequently confirmed that Motomco created this document.

42. Motomco's representation that it was attaching an NYSDEC document is literally false and sent with the intent and effect of deceiving and misleading retail consumers.

43. The statements in the NYSDEC document are false and misleading because NYSDEC has issued no such "regulation."

44. Similarly, the statements in Motomco's email that "New York State has officially gone on record" is also false and misleading, designed to mislead and deceive retail consumers.

45. Motomco's email contains a threat to retail customers: any person who sells d-CON® products will experience a "disruption to his business, loss of revenue as well as quarantine of products and substantial fines and penalties."

46. Motomco's email further states "d-Con is on the Titanic and doing whatever they can to climb onto any lifeboat they can," a statement that is literally false.

47. Contrary to the statements in Motomco's email, d-CON® is not on the "Titanic" and is not suffering any cancellation, revocation, recall or suspension of its d-CON® rodenticides that will lead any retailer to experience "disruption to its business, loss of revenue as well as quarantine of products and substantial fines and penalties."

48. These statements are literally false.

49. These statements are designed to intimidate and harass Reckitt Benckiser's valued retail customers and to disparage the d-CON® brand.

50. These statements were disseminated into interstate commerce with the intention of harming and interfering with Reckitt Benckiser's relationships with its retail customers and to disparage the brand and deceive retail customers.

51. This email has been sent to retail customers and has caused deception and confusion among them.

52. Retail customers have contacted Reckitt Benckiser to inquire about the communication.

53. Reckitt Benckiser has been forced to expend substantial resources in attempting to mitigate the harm done by Motomco's communication.

54. On information and belief, Motomco has engaged in making similar misrepresentations and misstatements as part of a national promotional scheme to compete unfairly against Reckitt Benckiser.

## COUNT I
### (Deceptive Advertising and Unfair Trade – Violation of the Lanham Act)

55. Plaintiff incorporates herein all factual allegations made above.

56. As described above, Motomco has made false and/or misleading statements of fact concerning its, and Reckitt's, rodent control products in commercial advertising and promotion.

57. Motomco has placed these false and/or misleading statements in interstate commerce.

58. Motomco's false and/or misleading statements of fact have actually deceived a substantial segment of the audience exposed to it, or have the capacity for such deception.

59. The deception caused by the false and/or misleading statements of fact, as described above, have, or are likely to, influence purchasing decisions.

60. Plaintiff has been injured as a result of Motomco's false and/or misleading statements of fact including potential decline in sales and market share, loss of goodwill, and additional losses and damages. Motomco has been unjustly enriched at the expense of Plaintiff as a consequence of its false advertising.

61. The foregoing acts of Motomco constitute false and/or misleading advertising and unfair trade in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and Plaintiff seeks to enjoin Motomco's false and/or misleading advertising and recover statutory money damages and the costs of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray:

A. For judgment that Motomco has violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

B. For a temporary restraining order and/or preliminary injunction requiring Motomco to immediately cease all use of the so-called "White Paper" and any statement that, directly or indirectly, suggests that d-CON® has been subject to adverse regulatory action, or that that retailers who choose to carry d-CON® will experience a disruption to its business, loss of revenue, quarantine of products, or substantial fines and penalties or any words to that effect.

C. For permanent injunctive relief requiring Motomco and its representatives and all those persons in active concert or participation with it from using the statements described above.

D. For an assessment of damages.

E. For an order requiring Motomco and its representatives to destroy the misleading and false advertising and issue corrective advertising in a form approved by the Court to dispel the serious competitive impact and effect of the false representations previously described.

F. For statutory attorneys' fees and costs.

G. For such other, further, or different relief as this Court may deem just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury for all claims.

Respectfully submitted,

ARNOLD & PORTER LLP

By: _____
Kerry A. Dziubek
Anthony D. Boccanfuso
399 Park Avenue
New York, New York 10022
Telephone: (212) 715-1000
Facsimile: (212) 715-1399

*Randall K. Miller
*Nicholas M. DePalma
ARNOLD & PORTER LLP
1600 Tyson Boulevard, Suite 900
McLean, VA 22102-4865
Main: 703.720.7000
Direct: 703.720.7030
Facsimile: 703.720.7399
Email: Randall.Miller@aporter.com
Email: Nicholas.Depalma@aporter.com

*(subject to admission *pro hac vice*)

*Counsel for Plaintiff Reckitt Benckiser Inc.*

Dated: August 18, 2010

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of August, 2010, I have caused the foregoing to be delivered via electronic transmission to:

Andrew L. Deutsch
DLA Piper LLP
1251 Avenue of the Americas
New York, New York 10020-1104
*Counsel for Defendant Motomco Ltd.*

Nicholas DePalma   8/19